435 P.2d 292

Donald **WILKERSON,** Plaintiff and Appellant,

v.

John W. **TURNER,** Warden Utah State Prison, Defendant and Respondent.

No. 10858.

Supreme Court of Utah.

Dec. 4, 1967.

Charles Welch, Jr., Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., LeRoy S. Axland, Asst. Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from the denial of a petition for habeas corpus. Affirmed.

Wilkerson says 1) he did not violate a conditional release from two felony convictions afforded him by the Utah State Board of Pardons, 2) that he was denied his constitutional rights at the time of his arrest within two weeks after the conditional release, and 3) that he was denied counsel on appeal, after he was convicted of another felony committed within two weeks after the conditional release mentioned.

■ As to 1): Although there is no precise reason shown in the record why his parole was terminated by the Pardons Board, there need be none given, since there were three independent reasons reflected in the record, justifying the action of the Board, i. e., (a) he remained in Utah for 12 days after he agreed to leave, (b) he voluntarily returned to the state,[1] and (c) he was convicted of his third felony—all of which events occurred prior to the Parole Board's revocation of his parole, and each of which, by agreement in writing he guaranteed would not occur. He broke faith with the Pardons Board in record time. Wilkerson seems to imply that one has a constitutional right to ignore and violate a privilege granted, on condition, to which he subscribes, and a constitutional right to burglarize and perhaps injure the person or property of some innocent, law-abiding citizen because a Pardons Board did not set out in detail its exact reason for its action.

As to 2): Having to do with improper interrogation after his arrest in another state on suspicion of another offense committed therein, there is no comfort found in the Escobedo [2] or Miranda [3] cases, and the record does not justify dignification of Wilkerson's contention here. We refer to the record itself simply to satisfy any reader's interest in the problem. We believe and hold such point on appeal to be without merit.

As to 3): Wilkerson was paroled conditionally on November 10, 1964. Without leaving the state pursuant to the condition, he remained two weeks. He committed a felony in Utah before he left, was taken into custody in Idaho on suspicion of having committed another felony there, and after having been questioned concerning burglar tools in the car in which he was riding with one Ledbetter, codefendant, who was also convicted of the Utah felony,[4] and whose petition for certiorari was denied by the U. S. Supreme Court,[5] he appealed to this court which upheld the conviction.

1. Which may not be too good a reason, since he voluntarily returned to face a burglary charge, of which he later was convicted.
2. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).
3. Miranda v. State of Ariz., 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
4. State v. Ledbetter, 17 Utah 2d 353, 412 P.2d 312 (1966).
5. Oct. 24, 1966, 385 U.S. 922, 87 S.Ct. 235, 17 L.Ed.2d 145.

Wilkerson was represented by competent counsel at the trial, although on his previous appeal to this court [6] he not only asserted that his counsel was incompetent, but embellished such accusation with a charge that the trial court was a liar, and that counsel appointed for him on appeal also was incompetent.

He now contends that this court denied him his constitutional rights by not appointing a second lawyer on appeal, after his first counsel appointed to pursue the appeal,—the compensated Public Defender, no less,—upon careful examination of the record, reported in writing to this court that he could find no merit to his appeal which in fact had been perfected in every procedural respect. The record was examined by a trained, appointed *advocate*,—not an *amicus curiae* (a rather fine distinction,—Ellis v. U. S.[7] to the contrary notwithstanding). Wilkerson can find no solace in the Ellis case, or in Anders v. State of California,[8] on the ground either that he did not have a conscientious *advocate*, or that he was discriminated against on the "rich man-poor man" argument, on both of which grounds the Anders case leaned so heavily, and without which the decision would have been somewhat sterile. Nor can Wilkerson assert that this court is deciding against him because we do not say whether his present appeal is "frivolous" or "without merit"; that we give no reason for our decision; that we decided this case on the same day of appeal, in a brief, unreported memorandum opinion; or on the rather superficial distinction between saying the appeal was "frivolous" or "without merit." After examining this record *twice,* if you please, and not having decided this case on the day it was appealed, but upon a second examination after appeal and after Wilkerson's advocate had withdrawn for lack of

6. Note 4, supra.
7. 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958).
8. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). (Note: The first paragraph of the Anders case says "We are here concerned with the extent of the duty of a court appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney *has conscientiously determined that there is no merit to the indigent's appeal*." At first blush this seems to assume that Mr. Murphy was a good, capable advocate,—not an amicus curiae, which, in fact, he was not. At this juncture, one easily could expect that the court would sustain him and the state appellate courts in his "no-merit" letter, on the very language lifted by the court in the Anders case from Ellis v. U. S., found on p. 1399, 87 S.Ct. 1396, as did all of the California judges in the Appellate Court and the Supreme Court. Yet the decision discounts all these judges' actions and volunteers that the conceded conscientious Mr. Murphy did not say enough in his no-merit letter, saying "We believe that counsel's *bare* conclusion, as evidenced by his letter is not enough," and smacked of the treatment of one Eskridge in an entirely different case. It seems to me there was no "bare" conclusion in such letter, but one of brevity, explanatory, and born of conscientious diligence and sincerity.) This footnote and emphasis are mine.

merit on appeal, we believe and hold that this appeal was not only frivolous, but without merit, admittedly based upon the cold record, which can hardly be warmed over by a journey through another series of courts.

The U. S. District Court for Utah appointed a highly reputable legal advocate to present and protect defendant's right on this appeal from denial of his petition for writ of habeas corpus.[9] This advocate in every sense of the word gave of his time, filed a well written brief and conscientiously raised a point on appeal not theretofore raised, and ably argued the same before this court. Although we disagree with his contentions, he did raise a point discussed in the Anders case. We think that case factually is not reconcilable with the case here, which in no way discounts our appreciation for Mr. Welch's services. In effect Wilkerson had two reputable advocates on appeal, appointed by two different courts. One wonders, however, whether we will be confronted with some further procedure in this court in which a claim will be urged that there was a violation of constitutional rights on grounds of incompetency of the third court-appointed counsel.

CALLISTER, TUCKETT and ELLETT, JJ., concur.

CROCKETT, C. J., concurs in the result.

9. Hon. Willis W. Ritter, Chief Judge, U. S. District Court for Utah, C. 93–66, July 9, 1966.